FILED

May 27 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

IN THE SUPREME COURT OF THE STATE OF MONTANA

OP 09-0176

MICHAEL E. ANDERSON; GERALD BENJAMIN;
BETTY BENJAMIN; MATTHEW BURDSALL;
MIRANDA BURDSALL; JOHN F. DIETZ;
MARGARET A. DIETZ; FRANKLIN GESSAMAN;
KATHY E. GESSAMAN; GARY HUFFORD;
YVONNE HUFFORD;  DIANE M. HUMPHREY;
ANDY J. JOHNSTON; JERI L. JOHNSTON;
JERILEE KANTHACK; HAROLD E. KELSH;
DIANA KUHL-HOWARD; DORIS KUHL;
ERIN LANIGAN; MAT LANIGAN; TERRY LEE
LAZURE; JACQUELINE F. LEE; PAMELA A. LEE;
CAROL L. MANDERA; JASON MOHLER; JACKIE
MOHLER; MARIE RINGLE; CONNIE SMIGAJ;
ALLAN SMIGAJ; EDWARD D. WILLETT; JARED
W. YATES; and ESTHER L. YATES,

FILED

MAY 2 7 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Petitioners,

v.

ORDER

MONTANA FIRST JUDICIAL DISTRICT COURT,
and HONORABLE DOROTHY McCARTER,
Presiding Judge,

Respondent.

Plaintiffs and Petitioners Michael Anderson, et al. (Petitioners), by counsel, filed a Petition for Writ of Supervisory Control, challenging three rulings made by the Respondent Montana First Judicial District Court, the Honorable Dorothy McCarter presiding, relative to discovery matters. On April 15, 2009, we ordered the Respondent or her designee to file a response to the Petition for Writ of Supervisory Control. On May 5, 2009, underlying defendants Burlington Northern Santa Fe Railway Company et al. (BNSF) filed a response to our order as Respondent's designee.

The Petitioners are residents of Helena, Montana, who filed suit against BNSF alleging that their real property was polluted by toxic chemicals from BNSF's railyard

1

operations in Helena. In July 2008, the Petitioners served a written discovery request on BNSF which included approximately 89 requests for production, 23 interrogatories, and 61 requests for admission. A number of these requests concerned operations at other railyards operated by BNSF, as well as other litigation currently pending against BNSF in both state and federal court in Montana. BNSF maintained that some of these discovery requests were overly broad and moved the District Court for the entry of a protective order. Following briefing, the District Court entered the protective order requested by BNSF, to the following effect:

1. The scope of discovery in which Petitioners could engage was limited to the Helena railyard and the environmental claims specifically alleged in the amended complaint.

2. Inadvertent production of privileged documents in response to discovery requests shall not be deemed a waiver of the privilege.

3. Confidential and proprietary information produced in response to discovery requests is to be held and treated as confidential and may not be disclosed to any third party.

The District Court did not provide any supporting rationale for its order.

In their Petition for Writ of Supervisory Control, Petitioners challenge each of these three rulings, and argue that supervisory control is appropriate in this matter. Petitioners argue that ruling (1) is contrary to Montana law and that the existence and frequency of BNSF's similar past conduct at sites other than the Helena railyard is relevant for purposes of proving liability and punitive damages, and challenging BNSF's denial of liability concerning railyard spills of fuel and chemicals. Petitioners note that they have the burden to prove their claims, and that producing proof that BNSF engaged in substantially similar conduct in the past and that BNSF disregarded property rights in doing so would support their claims.

Petitioners assert that prohibiting them from discovery of information relating to the contamination of substantially similar sites is manifestly unjust, prevents them from carrying their burden of proof, and is contrary to previous rulings from this Court,

2

including *Richardson v. State*, 2006 MT 43, 331 Mont. 231, 130 P.3d 634, and *Preston v. Mont. Eighth Jud. Dist. Ct.*, 282 Mont. 200, 936 P.2d 814 (1997), in which we have said that complete and thorough disclosure is required during the discovery process.

In *Richardson*, an elderly woman was injured in a slip and fall at a physical education and recreation facility at the Montana College of Technology in Butte. *Richardson*, ¶ 3. She filed suit against the state of Montana, and sought discovery concerning other slip and fall injuries at that location, and the steps the State had taken to prevent such injuries in the future. *Richardson*, ¶ 5. The State did not provide the requested information in accordance with the district court's order. We held that the State improperly concealed such discovery evidence, and that it was both relevant and potentially admissible as evidence of prior, similar conduct on behalf of the State. *Richardson*, ¶ 26.

Similarly, in *Preston*, a plaintiff brought a products liability suit against the manufacturer of a pneumatic roofing nailer. *Preston*, 282 Mont. at 202, 936 P.2d at 815. The plaintiff sought discovery asking for information about alternative designs of the nailer, and injuries caused by other nailers, some of which pre-dated the one at issue. The district court denied the discovery, and the plaintiff sought a writ of supervisory control. We granted the writ, holding that the district court was impermissibly restricting the scope of discovery, placing the plaintiff at a significant disadvantage. In *Preston*, we specifically noted that:

> Rule 26(b)(1), M.R.Civ.P., provides that any information "reasonably calculated to lead to the discovery of admissible evidence" is discoverable. Additionally, this Court has recognized that evidence of other injuries caused by similar products is relevant and *admissible*. *See Kuiper v. Goodyear Tire & Rubber Co.* (1984), 207 Mont. 37, 56, 673 P.2d 1208, 1219 ( *Kuiper II* ); *Krueger v. General Motors Corp.* (1989), 240 Mont. 266, 274, 783 P.2d 1340, 1346. If evidence of other injuries is admissible then it must be discoverable as well, since any information tending to lead to admissible evidence is subject to discovery under Rule 26(b)(1), M.R.Civ.P.

*Preston*, 282 Mont. at 207, 936 P.2d at 818.

As to ruling (2), Petitioners maintain that BNSF has the burden of establishing good cause for any protective order it seeks under M. R. Civ. P. 26(c), but that the District Court's ruling essentially exempts BNSF from this requirement. Petitioners assert that the District Court failed to review any of the documents at issue, and that its decision was not based on a particular and specific demonstration of facts justifying a protective order. Relying upon *Kamp Implement Co., Inc. v. J.I. Case Co.*, 630 F. Supp. 218 (D. Mont. 1986), and similar authority, Petitioners argue that the determination of whether any particular documents are privileged, and whether the privilege has been waived, requires a review of the actual documents at issue as well as a consideration of the circumstances surrounding their production. Here, Petitioners assert that the District Court's decision is an improper blanket order based on a purely hypothetical discovery dispute not actually before it; thus, the District Court is proceeding under a mistake of law resulting in gross injustice to the Petitioners.

With respect to ruling (3), the Petitioners advance a similar argument, asserting that the order is facially invalid because the District Court failed to actually review any documents, or make any required findings, to determine whether any of the requested information was indeed confidential or proprietary. The Petitioners argue that this ruling improperly presumes the confidentiality of documents subject to its discovery request. Further, Petitioners assert that this ruling shifts the burden of production onto the Petitioners because BNSF could simply designate any documents as "confidential" without necessarily having good cause to do so, thus forcing the Petitioners to challenge this designation before the District Court. Petitioners argue this aspect of the District Court's ruling is invalid under M. R. Civ. P. 26(c) and should be reversed.

BNSF urges us to deny the exercise of supervisory control in this matter. BNSF first notes that the Sixth Judicial District Court in Park County is currently entertaining very similar claims against BNSF and recently dealt with a nearly identical issue, issuing a protective order under the same terms as those issued here. BNSF points out that the plaintiffs in that case did not seek relief through a writ of supervisory control, and asserts that the case there is proceeding "uneventfully."

4

Additionally, BNSF argues that the protective order with respect to ruling (1) was within the District Court's discretion and was necessary given the massive amount of discovery conducted in this case already. BNSF argues that the Petitioners' discovery requests were overly broad and unfocused, with Petitioners requesting all documents exchanged in discovery and transcripts of all depositions taken in three other pending cases. BNSF asserts that Petitioners' discovery requests amount to a fishing expedition and are not narrowly tailored or reasonably calculated to lead to the discovery of admissible evidence. BNSF maintains that the District Court's decision was based on a careful review of the arguments of both parties and constituted an appropriate decision to limit discovery to the railyard at issue in this case and the environmental claims specifically alleged in the Petitioners' complaint.

Additionally, BNSF maintains that both *Preston* and *Richardson* are distinguishable from the case at bar. In this connection, BNSF asserts that litigation involving real property environmental contamination is vastly different from the slip and fall and products liability issues addressed in these two cases. As stated by BNSF, "Meteorological, geographical, environmental, geological, and operational differences make other railyards irrelevant both as to the alleged mechanism of contamination and to the remedies that may have been considered by BNSF or its predecessors." Instead, BNSF argues that Petitioners' requests must at least be narrowly tailored and calculated to lead to the discovery of admissible evidence.

With respect to ruling (2), BNSF points out that the District Court's ruling correctly states Montana law on privilege waiver through inadvertent production. Additionally, BNSF argues that supervisory control is not an appropriate remedy because the District Court's ruling does not place Petitioners at a significant disadvantage in litigating the merits of their case since the ruling is not specific as to any particular documents, there have been no sanctions imposed on either party, and therefore no irreparable harm has been visited upon the Petitioners. BNSF argues that the facts of this case simply do not warrant the exercise of supervisory control.

Finally, BNSF claims that the District Court's ruling (3) does not present any extraordinary circumstances justifying the exercise of supervisory control. Under M. R. Civ. P. 26(c)(7), the District Court may issue orders protective of trade secrets, and confidential research and business information. BNSF argues that the District Court's ruling was within the discretion afforded it by virtue of this rule. BNSF maintains that Petitioners' complaint that this ruling shifts the burden of challenging a potential designation of produced information as "confidential" or "proprietary" is both vague and hypothetical and falls short of the standard required for this Court to exercise supervisory control over this matter.

Under Article VII, § 2(2) of the Montana Constitution, this Court has supervisory control over all other courts in this state. Supervisory control is an extraordinary remedy which we invoke on a case-by-case basis, when a district court is proceeding under a mistake of law, causing a gross injustice for which the normal appeal process does not constitute an adequate remedy. *J.C. v. Eleventh Jud. Dist. Ct.*, 2008 MT 358, ¶ 12, 346 Mont. 357, 197 P.3d 907.

We conclude that supervisory control is appropriate in the instant case because the District Court is proceeding under a mistake of law which causes gross injustice to the Petitioners by placing them at a significant disadvantage in litigating this case, and that appeal would be an inadequate remedy. *See Preston*, 282 Mont. at 206, 936 P.2d at 818. Thus, we accept supervisory control and remand this matter to the District Court with instructions to reconsider its decision in a manner consistent with this Order.

First, we consider ruling (1). One of the inherent purposes of discovery is to assure "the mutual knowledge of all relevant facts gathered by both parties which are essential to proper litigation." *Richardson*, ¶ 22. For instance, M. R. Civ. P. 26(b)(1) states "[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." In *Richardson*, we held that " '[e]vidence of prior, similar accidents can have significant probative force bearing upon the question of the reasonableness of defendant's conduct.' " *Richardson*, ¶ 26 (quoting *Kissock v. Butte*

6

*Convalescent Cntr.*, 1999 MT 322, ¶ 16, 297 Mont. 307, 992 P.2d 1271). In addition, we noted in *Preston* that we have "recognized a strong public policy in permitting broad discovery concerning defective and dangerous products to promote the public safety." *Preston*, 282 Mont. at 207. In that the claims before us center upon the release of toxic contaminants, this public policy applies here.

The District Court's order contravenes this Court's well-recognized public policy in favor of broad discovery, and forecloses discovery of any prior similar conduct of BNSF which might indeed be relevant or probative of the liability and punitive damage issues in the instant case. At the same time, however, we agree with BNSF that some of the Petitioner's discovery requests are overly broad and that the District Court must be able to exert administrative control over discovery to ensure that pre-trial and trial proceedings move forward in an orderly manner.

While we have many times affirmed the general principle that evidence of prior similar accidents can have relevance in a succeeding action, because of the complexity involved in Petitioners' claims, the question of whether a former accident or incident at a BNSF railyard in Montana constitutes "similar conduct" relative to the claims at bar is not readily answerable. In this regard, BNSF is correct in noting that this case is factually dissimilar from previous cases applying this principle such as *Richardson* and *Preston*. In *Richardson*, it was a relatively simple matter to require the owner of the building to produce evidence of protective measures it had taken to prevent slip and fall injuries at that very facility. In *Preston*, likewise, it was straightforward to conclude that the plaintiff was entitled to discovery concerning similar models and designs of the nailer, as that would shed light on whether the manufacturer knew the nailer at issue in the case would raise a high probability of injury. *Preston*, 282 Mont. at 209, 936 P.2d at 819.

Again, we are dealing at this juncture with what is discoverable, not what is admissible. As we stated in *Preston*, discovery requests should be construed broadly "in favor of disclosing any information tending to lead to admissible evidence." *Preston*, 282 Mont. at 208. Based upon the foregoing, and appreciating the concerns raised by both parties, we conclude that on remand, the parties shall meet and attempt *in good faith*

7

to sort through the discovery requests in question with a view toward determining which activities at the other railyards can be fairly and truly categorized as—in Petitioners' words—"similar past conduct," and which information will truly lead to admissible evidence. In addition, to the extent Petitioners may already have possession of some of the requested information from other sources, they shall disclose this fact to Respondents and redact requests for such information from their discovery requests. Once the parties have in good faith sorted through the discovery requests in this fashion, they may then seek District Court direction only if necessary and only with respect to that information upon which they genuinely and in good faith cannot agree.[1] The parties are strongly urged to sort this out between them as comprehensively as possible.

Next we turn to ruling (2). Under M. R. Civ. P. 26(c), a district court may issue a protective order upon a showing of good cause. The party seeking the protective order must show that the requested discovery is privileged. *See Kamp Implement Co.*, 630 F. Supp. at 219-20; *Preston*, 282 Mont. at 205, 936 P.2d at 817 (discussing *Kuiper v. District Court*, 193 Mont. 452, 632 P.2d 694 (1981)). Here, there are no documents in dispute, so the District Court is not yet in a position to determine whether the privilege applies. While the District Court does have authority to control the timing, cost, and execution parameters associated with discovery, the District Court may not issue a blanket order classifying documents as privileged without conducting any review.

As a legal matter, BNSF is correct in noting that inadvertent production of material in discovery does not, *ipso facto*, constitute a waiver of the privilege. If BNSF inadvertently produces any privileged documents and then seeks to bar their use based on privilege, and the Petitioners disagree that the documents fall within the privilege, then the District Court can review the disputed documents and issue a ruling. The parties themselves should be able to come to an agreement on such matters and keep the amount

---

[1]  In this connection, the parties themselves may stipulate to a general definition of whether a railyard in Montana is substantially similar, or similarly situated, to the Helena railyard in light of the Petitioners' claims. *See e.g. Raytheon Aircraft Corp. v. United States*, 2006 WL 2570545 (D. Kan. 2006).

of disputed documents to a minimum. However, the District Court's ruling (2) as it stands is premature to the extent it can be construed to presume the privileged nature of produced documents without any review or inspection, thus defeating the "good cause" requirement for a protective order in M. R. Civ. P. 26(c).

Ruling (3) suffers from a similar concern. BNSF may seek a protective order with respect to any particular information, or possibly even with respect to a whole class of documents, which it believes constitutes confidential or proprietary information. However, it must demonstrate good cause for the protective order. Ruling (3) in its present form is unenforceable for the simple reason that it appears to place the confidentiality determination in the hands of BNSF, instead of requiring BNSF to show good cause for a protective order under M. R. Civ. P. 26(c). Accordingly,

IT IS ORDERED that the Petition for Writ of Supervisory Control is GRANTED. The parties are directed to meet and attempt in good faith to resolve the parameters of their discovery disputes, as herein set forth before, and preferably instead of, involving the District Court further in their discovery dispute.

IT IS FURTHER ORDERED that, to the extent the District Court's order is construed as a prospective blanket protective order, it is VACATED. The court may issue future protective orders relating to privileged, confidential, or proprietary information, upon a showing of good cause by the party seeking the order, in conformity with M. R. Civ. P. 26(c).

IT IS FURTHER ORDERED that the Clerk of this Court serve a copy of this Order upon all counsel of record and upon the Honorable Dorothy McCarter, Montana First Judicial District Court, under Cause No. ADV-2008-101.

DATED this 27th day of May, 2009.

9

_W. William Leaphart_

_Brian Morris_

_Jim Rice_
Justices